PONCIN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53097, 61619.   Promulgated December 15, 1932.

*Maurice R. McMicken, Esq.*, for the petitioner.

*Nathan Gammon, Esq.*, and *Vernon F. Weekley, Esq.*, for the respondent.

## OPINION.

SEAWELL: We will consider first the issue raised in Docket No. 53097; viz., what deduction, if any, is the petitioner entitled to take in 1928 on account of a loss sustained by reason of the sale in that year of its lots Nos. 3, 4, 7 and 8 to satisfy the tax liens against them, or loss sustained because of their abandonment by petitioner in that year.

The record shows that the petitioner in 1927 acquired from Birdie L. Poncin, Claude M. Poncin and Birdie V. Cline, in exchange for its capital stock, certain property of the estate of Gamma Poncin. At the same time and in the same deed, Claude M. Poncin conveyed his undivided one-half interest in lot No. 2 which was willed him by his mother, Eliza Poncin, deceased. The record further shows that, at the time the petitioner acquired the four lots of the aforesaid devisees, the improvement and general tax liens on them exceeded their value as appraised for Federal tax purposes upon the death of Gamma Poncin, and the evidence fails to show that their fair market value was other than the same as said appraised value of $2,800, when acquired by the petitioner, neither the appraised nor the fair market value (the same) taking into consideration the aforesaid tax liens against the lots. Both parties have dealt

with the lots on the idea that $2,800 was both their appraised value and their fair market value.

The Statutes of the State of Washington (Rem. Comp. Stat., 1922, sec. 11272, and 1927 Supp., sec. 11097–104) provide: "The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid * * *." And the same is true of local improvement assessments. (Sec. 9376, Rem. Comp. Stat., 1922.) There is no period of redemption from a tax sale after the issuance of a tax deed, with the exception of a three-year period for minors or insane persons. (Sec. 11097–119, Rem. Comp. Stat., 1927 Supp.) The petitioner, under the law of the State of Washington, was not personally liable for the payment of real estate taxes or local improvement assessments against the lots sold as stated, the recourse of the taxing authorities being against the property.

In behalf of the petitioner it is insisted that the fact that there were delinquent taxes or assessments against the four lots has no bearing on the amount of the loss the petitioner is entitled to deduct, citing and relying on sections 23 (f) and (g), 112 (b) (5), 113 (a) (5), and 113 (a) (8), of the Revenue Act of 1928.

In petitioner's brief, argument is made that, when petitioner corporation was formed and its stock issued in exchange for the property turned over to it by the three devisees under the will of Gamma Poncin, said devisees immediately thereafter were in control of the corporation " in the same proportion as their interests in the property under the will " of Gamma Poncin; that under section 112 (b) (5), *supra*, no gain or loss was recognized by the devisees; and that section 113 (a) (8), *supra*, was applicable in determining the basis for gain or loss to the petitioner upon the sale of the lots aforesaid, which gain or loss would be the same as in the hands of the transferors and by the provision of section 113 (a) (5), *supra*, the basis would be the fair market value of the property at the time of the death of Gamma Poncin, which was its appraised value of $2,800. When the lots were sold in 1928 for or on account of delinquent taxes and were abandoned by the petitioner, it is insisted it sustained a loss of $2,800.

In reply to the foregoing argument, it may be stated that the record shows that, when the three devisees transferred the lots and other property to petitioner in 1927 and received stock in exchange therefor, each of them did not in our opinion (based on the record) receive stock of petitioner "substantially in proportion to his interest in the property prior to the exchange," which would be necessary in order that section 112 (b) (5), *supra*, might be applicable. The *preferred* stock of petitioner appears from the

record to have been received by the transferors of the Gamma Poncin estate to petitioner in proportion to their respective interests, but such is not shown to be true as to the *common* stock, which was the only stock that had voting power. No common stock being shown to have been received by Birdie V. Cline, one of the three transferors of the property to the petitioner, section 112 (b) (5) of the Revenue Act of 1928, which is the same as section 203 (b) (4) of the 1926 Revenue Act, is not applicable.

The evidence shows that at the time the four lots were conveyed to petitioner the tax and assessment liens thereon exceeded the aforesaid appraised value of $2,800, which appears to have been their fair market value at the time of acquisition by petitioner, the accrued taxes thereon not being considered. Such liens were not a personal liability of the petitioner, but attached only to the lots. It is evident, therefore, that at the time these lots, with other property, were conveyed to the petitioner, the equity or interest of petitioner in the lots was practically valueless and, in abandoning them and permitting their sale to satisfy said liens, petitioner, in our opinion, sustained no loss, and the respondent did not commit error in disallowing any deduction upon the sale of the lots. His action is accordingly approved.

In Docket No. 61619 the issue is on what basis gain or loss should be computed on the sale made in 1929 by the petitioner of the undivided one-half interest in lot No. 2 which was owned solely by Claude M. Poncin and acquired from him by petitioner in 1927.

It appears from the briefs filed that the parties are agreed that the basis for computing gain or loss to petitioner on the sale of the undivided one-half interest in lot No. 2 which was received by the three residuary devisees under the will of Gamma Poncin and exchanged for stock of the petitioner may be considered to be its value as appraised for estate tax purposes ($112,000), subject to adjustment for capital expenditures or capital deductions, and such basis as adjusted ($110,469.74) was used by the respondent in determining the deficiency, as indicated in our findings of fact. As to such one-half interest petitioner assigns no error, although the evidence indicates that at the time it was acquired by the petitioner the other one-half interest in the same lot was of the value of at least $103,000.

In petitioner's brief it is stated that in computing the loss on the undivided one-half interest in lot No. 2 acquired from Claude M. Poncin and sold as stated in our findings of fact, petitioner used in its 1929 income tax return the amount of $145,970 as set up on its books as the cost basis, being the March 1, 1913, value, at that time believing such to be the correct method of ascertaining its deductible

loss. The petitioner's brief correctly states that the respondent in his deficiency notice computes the cost basis to petitioner of his one-half interest in the lot received from Claude M. Poncin at $20,000, being the amount of petitioner's note issued to Claude M. Poncin in payment therefor. It is, however, now insisted in petitioner's behalf that both above methods are wrong and that the correct basis for computing petitioner's gain or loss on the sale of the undivided one-half interest in the lot received from Claude M. Poncin is its fair market value at the time it was acquired by the petitioner in 1927, such undivided one-half interest being worth just the same as the other one-half, which had an appraised value of $112,000, considered and accepted by respondent as correct.

The transfer by Claude M. Poncin of his undivided one-half interest in lot No. 2 to the petitioner, though made in the same instrument with other transfers, was a separate transaction from the transfer to petitioner by the three residuary devisees of their interests in the estate of Gamma Poncin, deceased, including their one-half interest in lot No. 2, and was so treated by both parties. The consideration paid or given was different in character, although all the transfers were included in the same instrument. Neither Birdie L. Poncin nor Birdie V. Cline had any interest whatever in the undivided one-half interest in lot No. 2 willed to Claude M. Poncin by his mother, Eliza Poncin, deceased. For the transfer of such one-half interest Claude M. Poncin agreed to and did accept the note of petitioner for $20,000, bearing 6 per cent interest and due in three years.

Inasmuch as the petitioner did not issue any of its stock in payment for Claude M. Poncin's undivided one-half interest in lot No. 2, but acquired it by direct purchase with its $20,000 promissory note, the transaction, in our opinion, does not come within any of the exemptions provided by sections 112 or 113 of the Revenue Act of 1928, as insisted for the petitioner, but the basis for computing gain or loss on this undivided one-half interest when sold by the petitioner is the amount actually paid therefor; viz., $20,000. It is well settled that taxing statutes allowing exemptions are to be construed strictly in favor of the Government and the taxpayer has the burden of proving that he comes within the exemption provision. *Reinecke* v. *Spalding*, 280 U. S. 227; *Botany Worsted Mills* v. *United States*, 278 U. S. 282; *Franciscus Realty Co.* v. *Commissioner*, 39 Fed (2d) 583; *Insurance & Title Guarantee Co.* v. *Commissioner*, 36 Fed. (2d) 842; *Ogilvie* v. *Commissioner*, 36 Fed. (2d) 473.

In behalf of the petitioner, it is insisted that when Claude M. Poncin transferred his undivided one-half interest in lot No. 2 to

petitioner he did not make an outright sale of the property to a stranger for $20,000, but was transferring the same to a corporation in which he was a stockholder and all the corporation's stockholders were residuary devisees under his father's will. Although Claude M. Poncin may have conveyed his one-half interest in lot No. 2 to petitioner for less than its fair market value, the record indicates it was, nevertheless, a sale. In considering such, it should be borne in mind that the petitioner was an entirely different entity from Claude M. Poncin and the other stockholders therein and the evidence does not show that any of the parties at the time considered the transfer other than as a sale by Claude M. Poncin and a purchase by the petitioner, and it was so set up on its books.

It is further insisted for the petitioner that the transfer to it of Claude M. Poncin's undivided one-half interest in lot No. 2 increased the assets of the petitioner to the extent of the difference between the fair market value of said interest at the time of the transfer and the price ($20,000) paid therefor, and the same should be treated as the equivalent of a donated or paid-in surplus. In support of such insistence, *Rosenbloom Finance Corp.*, 24 B. T. A. 763, is cited and apparently chiefly relied on. The facts in that case and the instant case are different. In the *Rosenbloom Finance Corp.* case, *supra*, no stock, money, or other property was given for what was transferred to the petitioner by its majority stockholder and a condition of the transfer was that it should constitute paid-in surplus of the corporation, and the corporation in accepting said transfer declared the same to be paid-in surplus. Under such circumstances, it was held that the transfer was not a gift and that the proper basis for computing the gain or loss on the sale of the thing transferred was the fair market value of such property at the time it was acquired by the petitioner. In the instant case, there was a substantial consideration for the transfer. There was no condition or stipulation that the fair market value, or any part thereof, of the undivided one-half interest in lot No. 2 which was conveyed to petitioner by Claude M. Poncin should be treated as either a gift or paid-in surplus.

In the circumstances of the instant case, as disclosed by the record, it is our opinion that the transfer of the undivided one-half interest of Claude M. Poncin in lot No. 2 to petitioner for $20,000 was a sale to petitioner, though for much less than its value, and as such was properly so treated by the respondent in computing petitioner's deficiency in tax for 1929, and his determination of income tax deficiency for 1929 is approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*